UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY J. B.,[1] | ) | CIVIL ACTION NO. 4:22-CV-1036 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MARTIN O'MALLEY, *Social Security* | ) | |
| *Commissioner*,[2] | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Timothy J. B., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying in part his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the Court finds the Commissioner's final decision is supported by substantial evidence. Accordingly the Commissioner's final decision will be AFFIRMED.

## II.   BACKGROUND & PROCEDURAL HISTORY

On March 5, 2020, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 16; Doc. 13-2, p. 17).   In these applications, Plaintiff alleged he became disabled on November 1, 2018, when he was 52 years old, due to the following conditions: bilateral upper arm dysfunction, tension headaches, stomach issues with ulcers, bilateral knee pain, lower back pain, depression and anxiety. (Admin. Tr. 347; Doc. 13-6, p. 6). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions and use his hands. (Admin. Tr. 396; Doc. 13-6, p. 55). Plaintiff has at least a high school education. (Admin. Tr. 30; Doc. 13-2, p. 31). Before the

onset of his impairments, Plaintiff worked as a line installer, repairer. (Admin. Tr. 29; Doc. 13-2, p. 30).

On August 21, 2020, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 16; Doc. 13-2, p. 17). On December 30, 2020, Plaintiff's applications were denied upon reconsideration. (Admin. Tr. 16; Doc. 13-2, p. 17). On January 8, 2021, Plaintiff requested an administrative hearing. (Admin. Tr. 16; Doc. 13-2, p. 17).

On April 14, 2021, Plaintiff, assisted by his counsel, appeared and testified during a telephone hearing before Administrative Law Judge Howard Kauffman (the "ALJ"). (Admin. Tr. 39-79; Doc. 13-2, pp. 40-80). On April 30, 2021, the ALJ issued a partially favorable decision, denying in part Plaintiff's applications for benefits. (Admin. Tr. 16-32; Doc. 13-2, pp. 17-33). On June 12, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 251; Doc. 13-4, p. 75).

On May 5, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1-3; Doc. 13-2, pp. 2-4).

On July 4, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the court "enter an Order reversing the decision of the

Appeals Council, as it relates to their denial of the request for review of the Administrative Law Judge," and award benefits. (Doc. 1, p. 5). However, "[n]o statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review."[3] The Court construes Plaintiff's request as requesting the Court to reverse the administrative decision of the ALJ or remand Plaintiff's case for a new hearing.

On September 16, 2022, the Commissioner filed an answer. (Doc. 12). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 12). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 13).

Plaintiff's Brief (Doc. 20), and the Commissioner's Brief (Doc. 26) have been filed. Plaintiff did not file a reply. This matter is now ready to decide.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

---

[3] *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[4] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[6] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[7] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[8] In determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may

---

[4] *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[5] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[6] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[7] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[8] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

consider any evidence that was in the record that was made before the ALJ.[9] The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon.[10]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the

---

[9] *Matthews*, 239 F.3d at 593 ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review).").

[10] L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082, at *2 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

substantial-evidence standard to the deferential clearly-erroneous standard).[11]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[12] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[13]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular

---

[11] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[12] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[13] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

language or adhere to a particular format in conducting his analysis."
*Jones*, 364 F.3d at 505.[14]

**B.     STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[15] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[16] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[17]

---

[14] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[15] 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

[16] 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

[17] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[18] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[19]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[20] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[21]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

---

[18] 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).

[19] 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

[20] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

[21] 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

him or her from engaging in any of his or her past relevant work.[22]  Once this burden

has been met by the claimant, it shifts to the Commissioner at step five to show that

jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and

RFC.[23]

### C.   HARMLESS ERROR ANALYSIS

Social Security appeals are subject to a cautious harmless error analysis.[24]

> [A]ny evaluation of an administrative agency disability determination
> must also take into account the fundamental principle that: "'No
> principle of administrative law or common sense requires us to remand
> a case in quest of a perfect opinion unless there is reason to believe that
> the remand might lead to a different result.'" *Moua v. Colvin*, 541
> Fed.Appx. 794, 798 (10th Cir. 2013) quoting *Fisher v. Bowen*, 869 F.2d
> 1055, 1057 (7th Cir. 1989). Thus, ALJ determinations in Social
> Security appeals are subject to harmless error analysis, *Seaman v. Soc.
> Sec. Admin.*, 321 Fed.Appx. 134, 135 (3d Cir. 2009) and "the burden of
> showing that an error is harmful normally falls upon the party attacking
> the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409,
> 129 S. Ct. 1696, 1706, 173 L.Ed. 2d 532 (2009).[25]

---

[22] 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

[23] 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

[24] *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). *See also Stelzman v. Kijakazi*, No. 1:22-CV-82, 2023 WL 114053, at *14 (M.D. Pa. Jan. 5, 2023).

[25] *Metzger v. Berryhill*, No. 3:16-CV-1929, 2017 WL 1483328, at *4 (M.D. Pa. Marc. 29, 2017), *report and recommendation adopted sub nom*, *Metzgar v. Colvin*, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017).

"Under the harmless error rule, an error warrants remand if it prejudices a party's 'substantial rights.' An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the 'perceived fairness, integrity, or public reputation of judicial proceedings."[26] Thus, it is simply not enough for a claimant to establish the presence of an error.[27] Instead, a claimant carries the burden of showing he was prejudiced by that error, that is, but for the error there would have been a different result.[28]

### D.   REGULATIONS CONCERNING THE ALJ'S ASSESSMENT OF MEDICAL OPINIONS

In March 2017 changes to Social Security regulations governing medical opinions eliminated the treating physician rule in favor of a "more holistic analysis"[29] of the opinions:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness"

---

[26] *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

[27] *M.A. v. Comm'r Soc. Sec.*, No. 20-11609, 2022 WL 714738, at *2 (D. Del. Mar. 10, 2022).

[28] *Id.*

[29] *Stelzman*, 2023 WL 114053, at *9.

based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in

paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).[30]

Further, an ALJ must frequently evaluate multiple medical opinions.

> Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Mason*, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.[31]

Finally, it is important to note that "the question of disability is a legal determination and is not wholly dictated by medical opinions."[32] It is beyond dispute that "[t]he ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations."[33]

## IV.   DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)   Whether the Administrative Law Judge erred and abused his discretion by failing to consider the proper limitations from

---

[30] *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020). *See also Stelzman*, 2023 WL 114053, at *9-10.

[31] *Stelzman*, 2023 WL 114053, at *10.

[32] *Id.* at *12.

[33] *Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

degenerative disc disease of the cervical spine and lumbar spine, osteoarthritis of both shoulders, myofascial pain syndrome, somatic symptom disorder, obsessive personality disorder, depression and anxiety, which should have resulted in a finding that Plaintiff is limited to work at the sedentary exertional level?

(2)     Whether the Administrative Law Judge erred and abused his discretion in failing to afford proper weight to opinions from treating source, Dr. Terra Hussar, who stated that Plaintiff could not work, as compared to the opinions from the State Agency Consultants, which were inconsistent?

As will be explained below, we construe Plaintiff's brief as raising the following issues:

(1)     Whether the ALJ erred by crafting an RFC with both insufficient exertional and non-exertional limitations.

(2)     Whether the ALJ erred by limiting the persuasiveness he assigned to treating source Dr. Hussar's opinion.

(3)     Whether the ALJ erred by relying too heavily on the state agency medical consultants' opinions.

(4)     Whether the ALJ failed to adequately articulate how he reconciled the differences between the state agency medical consultants' opinions and why he adopted some but not all limitations from each of the two opinions.

We begin our analysis by summarizing the ALJ's findings, then will address the issues raised by Plaintiff.

## A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his April 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2021. (Admin. Tr. 18; Doc. 13-2, p. 19). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between November 1, 2018 (Plaintiff's alleged onset date) and December 31, 2021 (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr. 18; Doc. 13-2, p. 19).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the cervical spine and lumbar spine, osteoarthritis of both shoulders, myofascial pain syndrome, somatic symptom disorder, obsessive personality disorder, depression, and anxiety. (Admin. Tr. 18-19; Doc. 13-2, pp. 19-20).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 19-22; Doc. 13-2, pp. 20-23).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in less

than the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R.

§ 416.967(b) subject to the following additional limitations:

> He can occasionally lift and/or carry twenty pounds and ten pounds frequently. He can sit, stand, and walk for six hours each per eight-hour day. He is limited to occasional posturals with no ladders, ropes, or scaffolds. He is limited to occasional reaching overhead bilaterally. He must have no concentrated exposure to vibrations, unprotected heights, and moving machinery parts. He may perform simple, repetitive, routine tasks and cannot work at a production rate pace. He is limited to occasional interaction with the public, co-workers, and supervisors.

(Admin. Tr. 22-23; Doc. 13-2, pp. 23-24).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 29; Doc. 13-2, p. 30).

At step five, the ALJ reached a conclusion that was partially favorable to Plaintiff. The ALJ concluded that Plaintiff could engage in other work before he turned 55 but was disabled beginning on April 27, 2021 (his 55th Birthday). The ALJ's partially favorable conclusion was based upon the application of the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2.[34]

---

[34] "Appendix 2 provides rules using this data reflecting major functional and vocational patterns. We apply these rules in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work. (See § 404.1520(h) for an exception to this rule.) The rules in appendix 2 do not cover all possible variations of factors. Also, as we explain in § 200.00 of appendix 2, we do not apply these rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of a rule. In these instances, we give full consideration to all relevant facts in accordance with the

When Plaintiff celebrated his 55th Birthday, he was moved into a higher age classification under the Social Security Regulations. This shift in Plaintiff's age category had a significant vocational impact.

The ALJ relied on grid rule 202.14 as a framework for his analysis of the period prior to April 27, 2021. (Admin. Tr. 30; Doc. 13-2, p. 31). This rule directs that an individual closely approaching advanced age (between the ages of 50 and 54), who has earned a high school diploma, and has a history of non-transferrable skilled or semi-skilled work is not disabled.[35] The ALJ then posed a hypothetical question to a Vocational Expert ("VE") to determine whether Plaintiff's additional limitations (beyond a restriction to light work) would preclude the performance of other work. In response to the ALJ's questions, the VE testified that an individual between the ages of 50 and 54, with the same vocational characteristics as Plaintiff could do work as a: price marker, DOT #209.587-034; collator operator, DOT #208.685-010; and mail sorter, DOT #222.687-022. (Admin. Tr. 31; Doc. 13-2, p. 32). The ALJ relied on the grid rule and the VE's testimony to support his conclusion that Plaintiff was not disabled before his 55th Birthday.

---

definitions and discussions under vocational considerations. However, if the findings of fact made about all factors are the same as the rule, we use that rule to decide whether a person is disabled." 20 C.F.R. § 404.1569; 20 C.F.R. § 416.969.

[35] 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.14; 20 C.F.R. § 404.1563 (defining closely approaching advanced age); 20 C.F.R. § 416.963 (defining closely approaching advanced age).

For the period beginning April 27, 2021, the ALJ relied on grid rule 202.06. This rule directs that an individual of advanced age (age 55 or older), who has earned a high school diploma that does not provide for direct entry into skilled work and has a history of non-transferrable skilled or semi-skilled work is disabled.[36] The ALJ relied on this rule to support his conclusion that Plaintiff became disabled when he reached age 55.

### B.   WHETHER THE ALJ ERRED BY CRAFTING AN RFC WITH INSUFFICIENT EXERTIONAL AND NON-EXERTIONAL LIMITATIONS

Plaintiff argues generally that,

> The ALJ erred and abused his discretion by failing to consider the proper limitations from degenerative disc disease of the cervical spine and lumbar spine, osteoarthritis of both shoulders, myofascial pain syndrome, somatic symptom disorder, obsessive personality disorder, depression and anxiety, which should have resulted in a finding that Claimant is limited to work at the sedentary exertional level.

(Doc. 20, p. 12). Reading his argument it appears Plaintiff is alleging that the ALJ crafted an RFC with both insufficient exertional and non-exertional limitations.

Plaintiff goes on to assert,

> The RFC set forth by the ALJ limited Claimant to light work with additional limitations that did not accurately set forth all of the limitations from Claimant's severe impairments, as Claimant, per his testimony and the record, should have been held to work at the sedentary exertional level. (Admin Tr. 22-29). Despite evidence of regarding some issues with concentration due to Claimant's physical

---

[36] 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.06; 20 C.F.R. § 404.1563 (defining advanced age); 20 C.F.R. § 416.963 (defining advanced age).

health related issues, the RFC from the ALJ contains insufficient non-exertional limitations, and despite multiple severe physical impairments, insufficient exertional limitations, as will be discussed and highlighted below, which should have rendered Claimant capable of no more than sedentary work, or no work at all, as of his amended alleged onset date. (Admin Tr. 22-29). The ALJ failed to consider the record of this claim as a whole, as he focused almost solely on those treatment notes which support his determination regarding Claimant's RFC.

In the instant matter, as it relates to Claimant's severe impairments the medical records establish the following limitations and issues: (1) bilateral upper arm cramping, (2) severe pain with use of arms, relieved by rest, (3) rotation and use of shoulders causing significant pain, (4) reports of side effects to various medications, (5) significant fatigue, (6) poor quality of sleep, with waking due to pain, (7) being overwhelmed by tasks where Claimant has his housing (YWAM), (8) suicidal thoughts, (9) laying down twice per day, for 10 minutes at a time, (10) reoccurring feelings of despair, (11) regular breaks to ice his arms, (12) pain in his shoulder and wrist with activities 8 of 10, (13) Claimant's struggles with side effect from medications, and (14) severe episodes of major depressive disorder. (Admin Tr. 461, 463, 481, 484, 496, 509-513, 556, 650, 652, 674-675, 700-704, 748, 767, 770, 772, 774, 786, 808, 811, 897, 901, 927, 933, 939, 987, 1036, 1099, 1115, 1140, and 1158). These disorders and related issues, which are verified by both Claimant and the medical record, should not have been ignored by the ALJ in terms of Claimant's limitations in his RFC, as there is no evidence in the record to contradict the fact that Claimant actually experiences what he alleges on a daily basis as a result of these multiple impairments. As it relates to Claimant's arms, in particular, the ALJ fails to explain how Claimant would be capable of the type of reaching, handling, fingering, lifting and carrying required by work at the light exertional level, which, per 20 C.F.R. § 416.967, would require lifting no more than 20 pounds at a time, but frequent (up to 2/3 of the workday) lifting or carrying objects up to 10 pounds, with a good deal of walking or standing, and if sitting, the ability to do some pushing and pulling of arm of leg controls.

. . . .

Page 19 of 32

Claimant's testimony supported a finding that Claimant would be limited to work at the sedentary exertional level, at best, based upon the following: (1) knee pain that increases with activity, (2) stomach pain due to ulcers, (3) ongoing back pain, despite following prescribed exercises, (4) daily headaches, which last all day, (5) emotional and cognitive issues from headaches, causing difficulty with concentration, focus, memory, general thinking, causes frustration and anger, (6) arm pain made worse by simple activities of daily living, (7) cramping muscles, between the elbow joint and the shoulder bilaterally, (8) he did not help his friend move, and only gave verbal consultation to help his friend with his electric, (9) he has difficulty sleeping, (10) he ices his arms several times per day, (11) he will pay down during the day due to being tired, (12) he had difficulty working a light duty job after he tried to go back to work after his shoulder surgeries, (13) his medications have caused side effects, including fogginess, hives, limited strength and stamina and visual disturbances, (14) worsening mental-health issues due to pain, (15) reaching and holding things with his hands being difficult due to bilateral arm pain, (16) pain while sitting or standing, (17) alternating between use of his arms due to pain, (18) frequent arm cramps, (19) spasms in his arms 4 to 5 times per week, and (20) weakness and numbness in his arms. (Admin Tr. 44-69). The ALJ erred and abused his discretion in failing to consider Claimant's inability to work at his last job, due to limitations in lifting and carrying, due to multiple impairments impacting Claimant's arms bilaterally.

(Doc. 20, pp. 14-18) (all errors in original).

In response, the Commissioner argues that the RFC for a reduced range of unskilled light work did accurately capture Plaintiff's credibly established limitations. (Doc. 26, pp. 16-22).

As to exertional limitations, while Plaintiff has broadly alleged that the ALJ fashioned an RFC with insufficient exertional limitations, he has not identified any

specific additional limitations that should have been included in the RFC.[37] There is no suggestion of what other limitations might result from his "disorders" and "related issues" and therefore necessarily does not cite to any evidence supporting the credibility of any additional limitations. (Doc. 20, p. 15). It is Plaintiff's burden to show any additional limitations were warranted, and laundry lists of and vague references to subjective complaints and symptoms do not meet that burden.[38] Even if, as Plaintiff asserts, the ALJ did err by "ignor[ing]" some of Plaintiff's "disorders and other related issues which are verified by both Claimant and the medical record," (Doc. 20, p. 15), "Plaintiff cannot demonstrate that any error was harmful without identifying the additional limitations the ALJ should have included in the RFC."[39] Therefore this is not a basis for remand.

In terms of non-exertional limitations, Plaintiff does identify additional limitations that he believes were warranted. Plaintiff argues that,

---

[37] *See Kuntz v. Colvin*, No. 1:15-CV-00767-SHR-GBC, 2016 WL 6634942, at * 9 (M.D. Pa. Sept. 30, 2016), *report and recommendation adopted*, No. 1:15-CV-767, 2016 WL 6599994 (M.D. Pa. Nov. 8, 2016).

[38] *See Laicha v. Kijakazi*, No. 1:20-CV-00421, 2021 WL 3929739, at * 9 (M.D. P.a. Sept. 2, 2021) ("Laicha has failed to indicate the additional limitations that should have been included in the RFC and fails to provide any evidentiary support demonstrating the need for additional functional limitations."); *Malloy v. Comm'r Soc. Sec*, 306 F. App'x 761, 764 (3d Cir. 2009).

[39] *See Kuntz*, 2016 WL 6634942, at * 9 ("Plaintiff cannot demonstrate that any error was harmful without identifying the additional limitations the ALJ should have included in the RFC.") (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005)).

Despite indications in the record of issues with numbness and pain on a daily basis, whether walking, standing or sitting, as well as the recognition that Claimant's mental health related issues seem to be related to Claimant's chronic pain, and seem to worsen with Claimant's attempts to exert himself, the ALJ offers no limitations in Claimant's RFC regarding his (1) regular attendance at work, (2) the need to take unscheduled breaks, or (3) ability to remain on task despite the fact that all three (3) would likely get worse as the work day/ work week would progress forward. (Admin Tr. 22-29). The Vocational Expert testified that exceeding employer tolerances regarding these issues would render Claimant unemployable, as well Claimant being unable to work at the light exertional level if Claimant was limited to occasional use of the bilateral upper extremities for reaching in all directions, fingering, handling, feeling, pushing or pulling (which finding seems reasonable given the medical record and Claimant's testimony in this matter, and the State Agency Medical Consultants). (Admin Tr. 72-75 and 96-97, 117-118, 141-144 and 170).

(Doc. 20, p. 16). However, Plaintiff does not cite to any evidence that supports his assertion that these limitations were credibly established. Again, laundry lists of and vague references to subjective complaints and symptoms are insufficient to show any additional limitations were warranted.[40] Although Plaintiff has suggested additional non-exertional limitations and broadly recited some of his symptoms, it is not the role of the Court to "comb the record" looking for evidence supporting Plaintiff's argument.[41]

---

[40] *See Laicha*, 2021 WL 3929739, at * 9.
[41] *Claxton*, 766 F.3d at 307; *Ciongoli*, 2016 WL 6821082, at *2.

### C.   WHETHER THE ALJ ERRED BY LIMITING THE PERSUASIVENESS ASSIGNED TO DR. HUSSAR'S OPINION, RELYING TOO HEAVILY ON THE STATE AGENCY MEDICAL CONSULTANTS' OPINIONS AND FAILING TO RECONCILE THE DIFFERENCES BETWEEN THOSE OPINIONS

Plaintiff argues that "the ALJ erred and abused his discretion in failing to afford proper weight to opinions from treating source, Dr. Terra Hussar, who stated that Plaintiff could not work, as compared to the opinions from the State Agency Consultants, which were inconsistent." (Doc. 20, p. 19). Plaintiff begins this section of his argument by providing the Court with nearly three (3) pages explaining the treating physician rule and how regulations 20 C.F.R. §§ 404.1527 and 416.927 are applied. (Doc. 20, pp. 19-22). In doing so, Plaintiff has apparently overlooked the significant change in Social Security regulations applying to claims, like his, that were filed after March 27, 2017. Again,

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."[42]

---

[42] *Andrew G.*, 2020 WL 5848776, at *5 (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).

The Commissioner aptly noted for Plaintiff and the Court in a footnote in her brief in opposition (Doc. 26, p. 23 n.3) that Plaintiff relied on the outdated and incorrect regulations. Plaintiff did not file a reply brief.

Despite Plaintiff's recitation and use of the incorrect regulations, he does appear to make arguments that are not completely reliant upon those regulations. Plaintiff argues:

> The ALJ did not afford proper weight to the opinions from Dr. Terra Hussar, Claimant's neurologist with the Milton S. Hershey Medical Center, who personally examined Claimant, and who specializes in treatment of neurological disorders. (Admin Tr. 719). As set forth Dr. Hussar, she indicated that Claimant could not work for at least some period of time due to Claimant's ongoing issues with pain with muscle use, and resulting muscle fatigue, and that he may be able to return to work if he was able to regain the strength and stamina in his hands and legs, which is why he referred Claimant for treatment with OVR. (Admin Tr. 718).
>
> Instead, the ALJ focused almost solely upon the opinions from the State Agency Medical Consultants, which opinions were based upon a review of Claimant's medical records only (no personal examination of Claimant) and without many of the medical records submitted in this matter. In addition, it should be noted that not all of the opinions from the State Agency medical Consultants were consistent, in that some of them held Claimant to different limitations in the use of his bilateral upper extremities. (Admin Tr. 96-97, 117-118, 141-144 and 170). As such, if the ALJ stated in his Decision that he afforded their opinions great weight, he fails to explain why he adopted some, but not all, limitations from some and not others, and in particular as there is no reconciliation of the differences between their opinions by the ALJ, and as the ALJ held both State Agency Medical Consultants opinions to be persuasive. (Admin Tr. 26-28). In particular, the State Agency Consultants did not agree upon: (1) Claimant's limitations in his ability to push and pull, which were noted to be limited in both of Claimant's

upper extremities, (2) limited reaching in front/laterally/overhead bilaterally, (3) occasional postural, (4) occasional manipulation with bilateral upper extremities, (5). (Admin Tr. 96-97, 117-118, 141-144 and 170). In addition, when looking over the notes from the State Agency Medical Consultants, and the reference to different records and treatment, it seems as though the limitations they set forth do not match the severity of the impairments noted in the records. (Admin Tr. 98-101, 119-122 and 170). The ALJ only used the occasional bilateral overhead reach limitation, but not others concerning reaching in other directions or manipulation, which was relevant to the Vocational Expert in his testimony, particularly concerning work at the light exertional level.

(Doc. 20, pp. 22-24). It appears to the Court that Plaintiff is trying to argue (1) that the ALJ erred by limiting the persuasiveness he assigned to Dr. Hussar's opinion, (2) the ALJ relied too heavily on the state agency medical consultants' opinions, and (3) the ALJ failed to adequality articulate how he reconciled the differences between the state agency medical consultants' opinions and why he adopted some but not all limitations from each of the two opinions.

To the extent Plaintiff is in fact trying to argue the ALJ did not assign proper weight to Dr. Hussar's opinion, this argument is baseless. As explained, this claim was filed after March 27, 2017 and thus is not subject to the treating physician rule.

Any argument that the ALJ erred by limiting the persuasiveness he assigned to Dr. Hussar's opinion is also unavailing. The ALJ explains that Dr. Hussar's opinion was only limitedly persuasive:

Terra Hussar, M.D. indicated on January 30, 2019 that the claimant can return to work with some restrictions (Exhibit B7F). Dr. Hussar's

> opinion is somewhat supported by and consistent with his evaluation of
> the claimant during which he assessed the claimant with 3/5 strength of
> the shoulders. However, Dr. Hussar did not delineate the claimant's
> specific work related restrictions and, therefore, the opinion has limited
> probative value. Accordingly, the undersigned finds Dr. Hussar's
> opinion persuasive only to the extent it indicates the claimant has work
> related limitations pertaining to his shoulders.

(Admin. Tr. 28-29; Doc. 13-2, pp. 29-30). The ALJ more than adequately articulated

in a well-reasoned analysis how he considered this medical opinion and explained

how he arrived at his determination of the opinion's persuasiveness. The ALJ

discussed the consistency and supportability of Dr. Hussar's opinion, explaining that

it was somewhat supported and consistent with Dr. Hussar's examination of

Plaintiff. *Id*. The ALJ further explained that because the opinion did not delineate

work-related restrictions, it had limited probative value in the determination of

Plaintiff's RFC. *Id*. Finally, the ALJ specifically explained why he only found part

of the opinion to be persuasive. *Id*.

   Plaintiff provides nothing that supports his assertion that Dr. Hussar's opinion

should have been found more persuasive. Once again, that Dr. Hussar was a treating

physician did not *ipso facto* mean his opinion was to be considered highly

persuasive. Plaintiff attempts to support his argument by citing to two pages in the

medical record. (Doc. 20, p. 22). Although Plaintiff cites to these two pages, he only

summarizes Dr. Hussar's opinion that Plaintiff could not work for at least some time

and that Plaintiff may be able to return to work if he regained strength and stamina.

Page 26 of 32

*Id*. Plaintiff does not explain why those two conclusions made by Dr. Hussar should have been found more persuasive or point the Court towards evidence in the record to support his assertion. Plaintiff cites to nothing else to support his argument that Dr. Hussar's opinion is supported by and consistent with the record such that the ALJ's conclusion about the persuasiveness of the opinion was error. This leaves his assertion unsupported and bare. "Bare conclusory assertions are not enough to merit consideration."[43] Therefore this is not a point for remand.

As to Plaintiff's one sentence contention that "the ALJ focused almost solely upon the opinions from the State Agency Medical Consultants, which opinions were based upon a review of Claimant's medical records only (no personal examination of Claimant) and without many of the medical records submitted in this matter)," Plaintiff makes no actual argument in support. (Doc. 20, p. 22). Plaintiff merely makes this assertion without citing to anything and then moves on to discuss inconsistencies in the state agency medical consultants' opinions. *Id*. Plaintiff does not cite to any medical records, much less medical records received after the state agency medical consultants' opinions, to support his statement that the ALJ improperly relied on those opinions. It is flatly not the job of this Court to make

---

[43] *McFadden v. Berryhill*, No. CV 16-1007, 2017 WL 1058911, at *1 (W.D. Pa. Mar. 21, 2017).

Plaintiff's argument for him and hunt for evidence the ALJ may have overlooked.[44]
Further, as explained above, "[b]are conclusory assertions are not enough to merit
consideration."[45] Thus this is not a basis for remand.

Plaintiff's argument that the ALJ failed to adequately articulate how he
reconciled the differences between the state agency medical consultants' opinions
and why he adopted some but not all limitations from each of the two opinions is
also unpersuasive.

First, Plaintiff argues the ALJ did not reconcile the difference in the opinions
regarding Plaintiff's limitations in his ability to push and pull in both of his upper
extremities. (Doc. 20, p. 23). Even assuming *arguendo* that the there was a difference
in the state agency medical consultants' opinions that was not adequately reconciled
and explained, or more generally that the ALJ erred by failing to include push and
pull limitations, "Plaintiff's case on appeal suffers from a failure to come to grips
with the harmless error doctrine."[46] Plaintiff has provided the Court almost nothing
showing that, to the extent the ALJ did err regarding Plaintiff's limitations in pushing
and pulling, that error cause him legal harm. As noted by the Commissioner, "[w]hen
asked by the ALJ to further assume an individual unable to push/pull with the upper

---

[44] *Ciongoli*, 2016 WL 6821082, at *2.
[45] *McFadden*, 2017 WL 1058911, at *1.
[46] *Ciongoli*, 2016 WL 6821082, at *2.

Page 28 of 32

extremities, the VE confirmed the [jobs of price marker, collator operator and mail sorter] remained." (Doc. 26, p. 26). The VE in fact did so testify. (Admin. Tr. 72; Doc. 13-2, p. 73). Therefore, even if the ALJ did err with regards to push and pull limitations, that error is harmless and not a basis for remand.

Second, Plaintiff argues that the ALJ failed to reconcile the disagreement between the state agency consultants regarding his ability to reach in front and laterally in both upper extremities. (Doc. 20, p. 23). During the initial disability evaluation, Dr. Nugent opined that Plaintiff was limited in his ability to reach in front and laterally in both upper extremities. (Admin. Tr. 97, 118; Doc. 13-3, pp. 19, 40). Upon reconsideration, Dr. Ritner did not opine Plaintiff had such limitations. (Admin. Tr. 142, 168; Doc. 13-3, pp. 64, 90). In explaining why he found unpersuasive the part of Dr. Nugent's opinion that Plaintiff had limitations moving both upper extremities laterally and in front, the ALJ wrote,

> However, that aspect of the opinion regarding reaching in front or laterally is not consistent with the claimant's noted ability to move his extremities spontaneous and symmetrically . . . . Thus, while the undersigned generally finds the opinions of the State agency medical consultant persuasive, the undersigned does not find those aspects of the opinions regarding reaching in front and laterally . . . persuasive.

(Admin. Tr. 27; Doc. 13-2, p. 28). Thus, contrary to Plaintiff's assertion, the ALJ adequately explained why he found unpersuasive the part of Dr. Nugent's opinion regarding Plaintiff's limitations on reaching in front and laterally with both upper

extremities, reconciling this difference between the state agency medical consultants' opinions. This explains why the ALJ did not adopt that limitation in formulating the RFC. Thus, this is not a point for remand.

Third, Plaintiff asserts the ALJ did not reconcile the differences between the state agency medical consultants' opinions regarding Plaintiff's postural limitations. (Doc. 20, p. 23). It is unclear what limitations Plaintiff is asserting the state agency consultants disagree on. Plaintiff writes only "occasional postural . . . ." (Doc. 20, p. 23). Reviewing the record and the pages Plaintiff cites to is not enlightening. At the initial disability evaluation, Dr. Nugent opined Plaintiff had postural limitations that limited him to climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling occasionally, and that Plaintiff could never climb ladders, ropes or scaffolding. (Admin. Tr. 97, 117-118; Doc. 13-3, pp. 19, 39-40). At the reconsideration level, Dr. Ritner opined that Plaintiff had postural limitations that limited him to climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling occasionally, and that Plaintiff could never climb ladders, ropes or scaffolds. (Admin. Tr. 142, 168; Doc. 13-3, pp. 64, 90). The Court is unable to discern any differences between the opinions in regard to postural limitations. Plaintiff does not specifically point to or otherwise explain what postural limitations he believes the state agency consultants disagreed on. As it appears that the state agency consultants' opinions did agree on postural limitations, there was nothing for

Page 30 of 32

the ALJ to reconcile. The Court also notes that the ALJ included these postural limitations in the RFC. (Admin. Tr. 22; Doc. 13-2, p. 23). Therefore this is not a basis for remand.

Finally, Plaintiff asserts the ALJ failed to reconcile differences in the state agency consultants' opinions on Plaintiff's "occasional manipulation with bilateral upper extremities." (Doc. 20, p. 23). At the initial disability evaluation, Dr. Nugent opined that Plaintiff could handle, finger, and feel without limitation, but could only frequently reach in front or laterally with both upper extremities and could only reach overhead with both upper extremities occasionally. (Admin. Tr. 97-98, 118; Doc. 13-3, pp. 19-20, 40). At the reconsideration evaluation, Dr. Ritner opined that Plaintiff could handle, finger and feel without limitation, but could only reach overhead with both upper extremities occasionally. (Admin. Tr. 142-43, 168-69; Doc. 13-3, pp. 64-65, 90-91). The only difference the Court can identify as to manipulative limitations is in the reaching limitations, with Dr. Nugent opining Plaintiff had bilateral restrictions on reaching in front and laterally. (Admin. Tr. 97, 118; Doc. 13-3, pp. 19, 40). As discussed above, the ALJ adequately explained why he did not find this part of Dr. Nugent's opinion persuasive and did not include such a limitation in the RFC. Plaintiff does not specifically cite to any other difference between the state agency consultants' opinions that the ALJ failed to reconcile as to manipulative limitations. The ALJ included a bilateral occasional overhead reaching

limitation in the RFC that was opined by both Dr. Nugent and Dr. Ritner. Thus, this is not a basis for remand.

## V.   CONCLUSION

In accordance with the above, I find that Plaintiff's request for reversal of the administrative decision of the ALJ or remand for a new hearing be denied as follows:

(1)   The Commissioner's final decision is AFFIRMED.

(2)   Final judgment in the Commissioner's favor will be issued separately.

(3)   An appropriate order will be issued.

Date: March 6, 2024                              BY THE COURT

                                                 _s/William I. Arbuckle_
                                                 William I. Arbuckle
                                                 U.S. Magistrate Judge